MISSISSIPPI FLEET CARD, L.L.C.; Buffalo Services, Inc.; Burns & Burns, Inc.; Cantron Oil, Inc.; Clark Petroleum; Dutch Oil Company, Inc.; Gresham Petroleum Co.; Litco Petroleum, Inc.; Maples Gas Company, Inc.; Pine Belt Oil Co., Inc.; Ramco, Inc.; Sayle Oil Company, Inc.; and Waring Oil Co., Plaintiffs,

v.

BILSTAT, INC.; Edward Abou–Fadel; Stephen J. Hatch; Bilstat Holding Co.; Bilstat Enterprises Corporation; Diversified Fleet Sales, Inc.; and John Does 1–10, Defendants.

No. CIV.A. 3:01CV352BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 19, 2001.

John W. Robinson, III, Benjamin L. Robinson, Phelps Dunbar, Jackson, MS, for plaintiffs.

Ricky G. Luke, Jack Robinson Dodson, III, Craig, Hester, Luke & Dodson, P.A., Jackson, MS, David A. Fettner, Houston, TX, for defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of the Defendants to Dismiss and Compel Arbitration, or alternatively, to Stay Proceedings Pending Arbitration.[1] The Court has considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority and finds that the Motion should be granted in part, and denied in part.

### I. Factual Background and Procedural History

In December of 1995, Plaintiff Mississippi Fleet Card, L.L.C. ("MFC") entered into a Development Agreement with Defendant BilStat, Inc. ("BilStat") whereby the latter agreed to design, develop and implement a credit card system by which customers of MFC Members could purchase goods and services on credit.[2] On May, 18, 1997, upon completion of all phases of the Development Agreement, MFC and BilStat entered into a Processing Agreement which contains an arbitration clause that is the subject of the pending motion. *See* Motion to Dismiss, et al., Exhibit 1, ¶ 50. Under the terms of the Processing Agreement BilStat issued credit cards, called FleetSmart Cards, to qualifying customers of MFC Members. BilStat was to then collect data regarding purchases made with the FleetSmart Cards, bill customers for the charges, collect and direct cardholder payments to a

---

1. Also before the Court is the Motion of Plaintiffs for an Extension of Time in which to respond to the subject Motion of the Defendants. The Court finds that as the Plaintiffs already filed a Response which was considered by the Court, their motion should be denied as moot.

2. Plaintiffs Buffalo Services, Inc.; Burns & Burns, Inc.; Cantron Oil, Inc.; Clark Petroleum; Dutch Oil Company, Inc.; Gresham Petroleum, Co.; Litco Petroleum, Inc.; Maples Gas Company; Inc.; Pine Belt Oil Co., Inc.; Ramco, Inc.; Sayle Oil Company, Inc.; and Waring Oil Co. are all members of Mississippi Fleet Card, L.L.C. ("MFC Members").

"locked box" owned by MFC, determine which MFC Members were entitled to payment from the funds collected, and disburse payments from the locked box into the MFC Member accounts. After entering the Processing Agreement, MFC agreed to allow BilStat to disburse payments from the MFC locked box into an account owned by BilStat to facilitate the payment for goods and services purchased with the FleetSmart Card at locations that were not owned by MFC Members.

MFC alleges that in 1999 it began receiving inquiries from the MFC Members regarding the financial reports and other services provided by BilStat. MFC also alleges that upon investigation of these inquiries, it discovered that payments received into the MFC locked box had not been distributed to MFC Members and that BilStat had disbursed payments for its own benefit and to its other clients. In total, MFC alleges that BilStat misappropriated at least $2,000,000.00 from the MFC locked box. MFC also alleges that BilStat, contrary to the terms of the Processing Agreement, refused to provide it access to the credit card system, including information regarding FleetSmart cardholders and their accounts, source code materials, and the computer software necessary for MFC to establish and operate its own credit card system.

On August 31, 2000, MFC provided BilStat written notice of its intent to terminate the Processing Agreement unless BilStat cured all of its alleged breaches of that agreement. The termination notice became effective on October 1, 2000. MFC alleges that because BilStat refused it access to the FleetSmart credit card system, it negotiated a separate agreement whereby BilStat would continue to process the credit-related information but MFC would direct disbursements from the locked box after review of the information it was provided. This arrangement contin-

ued until on or about April 1, 2001, at which time MFC stopped use of the services provided by BilStat, and requested BilStat to relinquish all information necessary for MFC to assume FleetSmart credit-related services, including the names and relevant account information of the cardholders. MFC alleges that BilStat refused to relinquish the requested information thereby again breaching the Processing and Development Agreements.

On May 9, 2001, Plaintiffs filed a complaint in this Court against the named Defendants on the basis of diversity of citizenship jurisdiction. For the purpose of diversity analysis, Plaintiffs are all corporate citizens of, and have their principal places of business in the State of Mississippi. Defendants BilStat, BilStat Enterprises Corporation, BilStat Holding Company, and Diversified Fleet Sales, Inc. are all corporate citizens of, and have their principal places of business in the State of Texas. Defendants Edward Abou–Fadel ("Abou–Fadel") and Stephen J. Hatch ("Hatch") are citizens of the State of Texas. Therefore, the Court finds that the complete diversity requirement of 28 U.S.C. § 1332 is satisfied. The Court additionally finds, as the complaint sets forth damages in excess of $2,000,000.00, that the amount in controversy requirement is likewise satisfied. Accordingly, the Court finds that it may properly assert subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

Through the complaint, MFC seeks multiple declaratory judgments from the Court, including that BilStat materially breached the terms of the Processing Agreement, that BilStat failed to cure the alleged breaches, and that the conduct of BilStat constituted an actual and/or constructive termination of the Processing Agreement thereby forfeiting its right to enforce its terms, including the arbitration

provision.[3] MFC seeks an injunction "prohibiting BilStat from disclosing, using, converting, selling, or duplicating MFC's proprietary and confidential information ... [and] requiring BilStat to return all of MFC's proprietary and confidential information to MFC." *See* Complaint, Count II, ¶ 126. MFC also asserts that "BilStat should be ordered to provide an accounting to MFC for all monies transferred, deposited or paid into or transferred or disbursed from the MFC locked box." *See Id.* Count III, ¶ 128. Finally, MFC alleges, as set forth by the factual allegations contained in the complaint, claims of: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) bad faith breach of contract, (4) willful, malicious, and intentional breach of contract, (5) breach of fiduciary duty, (6) fraud, (7) conversion, (8) willful, malicious, and intentional conduct, (9) gross negligence, (10) negligence, (11) civil conspiracy and violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), codified at 18 U.S.C. § 1962 *et seq.,* (12) alter ego, and (13) unjust enrichment. *See Id.* Counts IV through XVI, ¶¶ 129–161. Defendants have moved to dismiss and compel arbitration on the claims alleged in the complaint or, in the alternative, to stay proceedings pending arbitration.

## II. Analysis

### A. Are the Claims of the Plaintiffs Subject to Arbitration?

#### 1. MFC versus BilStat

 Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in ... a contract[, evidencing a transaction involving commerce,] ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The first inquiry of the Court is whether the Processing Agreement, which contains the subject arbitration provision, is a "contract evidencing a transaction involving commerce." *Id.* In this regard, the United States Supreme Court has held that under the FAA, "control over interstate commerce reaches not only the actual physical interstate shipment of goods but also [extends to] contracts relating to interstate commerce." *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. at 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The Court finds that as the subject Processing Agreement and attendant arbitration clause was entered into, and was to be performed by, citizens of different states, the Processing Agreement does involve interstate commerce as that term is defined by FAA precedent. *See e.g. Id.* at 281, 115 S.Ct. 834 (indicating that the term "involving commerce" should be construed liberally as meaning "affecting commerce."). *See also Del E. Webb Constr. v. Richardson Hosp. Auth.,* 823 F.2d 145, 147 (5th Cir.1987) (holding that "[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA." (citations omitted)). The Court, therefore, finds that the Processing Agreement, which contains the subject arbitration clause, is a contract involving interstate commerce which may be enforced under the FAA.

 The Court must next determine whether the parties agreed to arbitrate their disputes. *See Harvey v. Joyce,* 199 F.3d 790, 793 (5th Cir.2000). In this regard, the intent of the parties is deter-

---

**3.** For a complete account of all of the declaratory judgments sought by MFC, *see* Complaint ¶¶ 110 to 121.

mined by employing the state law rules of contract construction. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As explained by the United States Court of Appeals for the Fifth Circuit: "A finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding creates a presumption in favor of arbitration. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable." *Harvey,* 199 F.3d at 793 (citing *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927).

In the case *sub judice,* the Processing Agreement entered into between MFC and BilStat provides, in relevant part:

> The parties agree that disputes that cannot be resolved between them shall be submitted to a panel of arbitrators for arbitration at a mutually agreeable time and place. The rules and arbitrators for said arbitration shall be mutually agreed upon. If after a good faith effort the parties cannot agree, then the rules of the American Arbitration Society shall be substituted for the party's agreement and the location shall be such location the parties agree upon. If no location can be agreed upon, either Las Vegas, Chicago, or Dallas shall be the location of the arbitration.

*See* Motion to Dismiss, et al., Exhibit 1, ¶ 50. The Court finds, given the broad language of the subject arbitration clause, that MFC and BilStat intended all dis-

putes arising between them, in connection with the Processing Agreement, to be arbitrated. *See Nauru Phosphate Royalties Inc. v. Drago Daic Interests Inc.,* 138 F.3d 160, 165 (5th Cir.1998) (holding that "when parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship.") (citations omitted). Additionally, MFC has not presented any evidence or argument to show that it intended not to arbitrate the claims it alleges in the complaint, all of which arise from action taken by BilStat with regard to the Processing Agreement. Accordingly, the Court finds that MFC and BilStat agreed to arbitrate the claims which are the subject of the present lawsuit.

Having concluded that the claims alleged by MFC are subject to arbitration, the Court must now determine whether the arbitration provision is enforceable. *See R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992). "A party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or coercion [or] that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked." *American Heritage Life Ins. Co. v. Harmon,* 147 F.Supp.2d 511, 514 (N.D.Miss.2001) (citing *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 680–81 (5th Cir. 1976)).

MFC, in paragraph 114 of the Complaint, alleges that it "is entitled to a declaration from this Court that BilStat's conduct constituted an actual and constructive termination of the Processing Agreement, according to which and as a result of, BilStat forfeited, waived and abandoned its rights under the Processing Agreement, including without limitation the arbitration provision under the Processing Agreement." In responding to the subject Mo-

tion to Compel Arbitration, however, MFC has not argued that the arbitration agreement is not enforceable or should be revoked because of the actions allegedly taken by BilStat, and has not presented any evidence to show that revocation of the arbitration agreement is warranted. Additionally, MFC has not presented any evidence or argument to show that the arbitration clause is otherwise unenforceable under laws of the State of Mississippi.

■ The Court, having carefully considered the terms of the Processing Agreement, the arbitration clause, and controlling law, finds that all of the claims asserted by MFC against BilStat in case *sub judice* are arbitrable under the subject arbitration clause and that that clause is enforceable. The Court, therefore, finds that MFC should be compelled to arbitrate all of the claims it alleges against BilStat in this case.[4]

## 2. MFC v. Non–Signatory Defendants

■ Defendants BilStat Holding Company, BilStat Enterprises, Corporation, Diversified Fleet Sales, Inc., Abou–Fadel, and Hatch ("Non-signatory Defendants"), although not signatories to the Processing Agreement which contains the subject arbitration clause, seek to compel arbitration of the claims asserted against them by MFC. Courts in this circuit recognize that a non-signatory may enforce an arbitration agreement against a signatory of such agreement in cases in which: "(a) the non-signatory is alleged to be the agent of a signatory or (b) the claims against the non-signatory are fundamentally grounded in, intimately founded in and intertwined with, or arise out of and relate directly to the agreement containing

the arbitration clause." *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.,* 957 F.Supp. 839, 841 (S.D.Miss.1997) (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 758 (11th Cir. 1993)) (alterations in original). *See also Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524 (5th Cir.2000); *Harmon,* 147 F.Supp.2d at 511. As explained by the Fifth Circuit in *Grigson:*

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegation of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson,* 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999)).

The Court finds that all of the claims asserted by MFC against the Non-signato-

---

**4.** In Count XIV, MFC asserts a claim of civil conspiracy and violation of the RICO Act. The United States Supreme Court has found that RICO claims are subject to arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 242, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (finding that "nothing in RICO's text or legislative history ... demonstrates congressional intent to make an exception to the Arbitration Act for RICO claims.").

ry Defendants either presume the existence of the written Processing Agreement or allege "concerted misconduct" by both the Non-signatory Defendants and BilStat. For example, in the complaint MFC alleges that Abou–Fadel and Hatch were "employed by and/or were officers and/or directors of BilStat and were charged with the operations and decision making of the corporate defendants with respect to the conduct alleged [in the complaint]." *See* Complaint at ¶ 39. All of the "conduct" alleged in the complaint pertains to actions that were taken by BilStat either in furtherance of, or contrary to, its obligations as set forth by the Processing and Development Agreements. *See* Complaint at ¶¶ 36–109. This "conduct" also serves as the basis for all of the claims asserted by MFC against the Non-signatory Defendants. *See* Complaint Counts I–XVI. The Court, therefore, finds that as the claims asserted by MFC against the Non-signatory Defendants arise out of conduct that directly relates to the Processing Agreement, MFC should be compelled to arbitrate the claims it alleges against the Non-signatory Defendants under the doctrine of equitable estoppel.

### 3. MFC Members v. BilStat and Non-signatory Defendants

■ BilStat and the Non-signatory Defendants also seek to compel arbitration of the claims asserted against them by the MFC Members, none of which are signatories to the Processing Agreement. The complaint does not specifically delineate the claims alleged by MFC from those alleged by the MFC Members. The Court, in liberally construing the complaint, finds that MFC and the MFC Members have alleged identical causes of action against the named Defendants. The Court also finds, that as all of the claims alleged by MFC relate to the Processing Agreement, all of the claims alleged by the MFC Members likewise relate to that agreement.

The record shows that the MFC Members did not sign the Processing Agreement entered between MFC and BilStat.[5] Courts, however, have recognized that "[b]ecause arbitration is a creature of contract law, when asked to enforce an arbitration agreement against a non-signatory to an arbitration clause we ask 'whether he or she is bound by that agreement under traditional principles of contract and agency law.'" *E.I. DuPont de Nemours and Company v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194–95 (3d. Cir.2001). *See also Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir.1990); *Letizia v. Prudential Bache Securities, Inc.* 802 F.2d 1185, 1187 (9th Cir. 1986) (holding that "[o]ther circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles."). Under these theories, third party beneficiaries to a contract containing an arbitration clause have been bound by that clause in cases in which their claims arise out of the underlying

---

5. Paragraph 52 of the Processing Agreement provides that by the signature of the MFC representative, "MFC represents and warrants that this agreement has been or shall be ratified by its members in the form and manner required by MFC's bylaws, rules or regulations. A copy of the that [sic] ratification is attached hereto and incorporated as if recited verbatim." *See* Motion to Dismiss, Exhibit 1. The Processing Agreement also provides that attached to the contract are:

Minutes of Meeting of MFC signed by authorized representative of each Member ratifying this Processing Agreement and agreeing to be bound by its terms.
or
Resolution signed by authorized representative of each of the MFC Member ratifying this Processing Agreement and agreeing to be bound by its terms.
*Id.* The Court was not provided a copy of this attachment.

contract. *See e.g. E.I. DuPont,* 269 F.3d at 195; *Industrial Elecs. Corp. of Wis. v. iPower Distribution Group, Inc.,* 215 F.3d 677, 680 (7th Cir.2000) (finding that a third party beneficiary to a contract containing an arbitration clause would be bound by that arbitration provision).

 Under Mississippi law, a stranger to a contract, i.e. third person, "may sue for a breach of contract 'only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee.'" *Mississippi High Sch. Activities Ass'n, Inc. v. Farris,* 501 So.2d 393, 396 (Miss.1987) (quoting *Burns v. Washington Sav.,* 251 Miss. 789, 171 So.2d 322, 324 (1965)). Therefore, in order for the MFC Members to have standing to maintain their breach of contract-related claims:

> It must appear (1) that the terms of the contract are expressly broad enough to include the third party either by name or as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Arnold's of Miss., Inc. v. Clancy* 251 Miss. 613, 171 So.2d 152, 153 (1965); *See also Farris,* 501 So.2d at 396 (same); *Hanberry Corp. v. State Bldg. Comm'n,* 390 So.2d 277, 279 (Miss.1980) (holding that "[i]n order for a third person beneficiary to have a cause of action, the contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms.").

The facts of this case show that the Processing Agreement specifically refers to the MFC Members, and sets forth the obligations BilStat has to them under the terms of the agreement. *See e.g.* Motion to Dismiss, Exhibit 1 at ¶ 1 (requiring all of the MFC Members to recognize BilStat issued FleetSmart Cards); ¶ 2 (requiring BilStat to create reports summarizing sales made with the FleetSmart Cards for each MFC Member). Second, the MFC Members are benefitted by the terms of the Processing Agreement. *See Id.,* Exhibit 1 at ¶ 3 (indicating that the use of the FleetSmart Card as payment for goods and services "shall create a right to payment owned by the member of the MFC who provides the services and/or goods to the cardholder."). Third, as MFC is a limited liability corporation comprised of the MFC Members, MFC had a substantial interest with regard to the welfare of the individual members. The Court, therefore, finds that under Mississippi law, the MFC Members are third party beneficiaries of the Processing Agreement. Further, as discussed above, all of the claims asserted by the MFC Members arise under or relate to the Processing Agreement which contains the subject arbitration agreement. As such, the Court finds that the claims alleged by the MFC Members arise from their status as third party beneficiaries to that agreement. Accordingly, the Court finds that the MFC Members are bound to arbitrate all of the claims they allege against the named Defendants. *See e.g. E.I. DuPont,* 269 F.3d at 197 (holding that third party beneficiary will only be bound by the terms of the underlying contract in cases in which the claims it asserts arise from its third party beneficiary status); *Industrial Elecs.,* 215 F.3d at 680.

Non-signatories have also been bound to the terms of arbitration agreements under the theories of (1) incorporation by refer-

ence, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel. *See American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999). Under the theory of estoppel, a court may "prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *E.I. DuPont*, 269 F.3d at 200. As explained by the United States Court of Appeals for the Fourth Circuit:

> In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. To allow a plaintiff to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.

*International Paper Co. v. Schwabedissen Maschinen & Anlagen, GMBH*, 206 F.3d 411, 418 (4th Cir.2000) (alterations in original). Thus, a Court may compel non-signatory plaintiffs to arbitrate their claims in cases in which they, "during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *E.I. DuPont*, 269 F.3d at 200 (citing *Tencara Shipyard*, 170 F.3d at 353 (holding that a non-signatory which had derived benefits under a contract could not avoid the arbitration clause contained therein)).

In the case *sub judice*, the MFC Members contend that they, in their individual capacities, were to receive benefits under the Processing Agreement, including the right to payment for goods and services purchased with the FleetSmart Cards at their places of business, and the right to receive a report summarizing FleetSmart Card purchases at those locations. The record also shows that the Processing Agreement was entered by MFC and BilStat on or about May 8, 1997, and that the MFC Members did not begin making inquiries with regard to the actions taken by BilStat until "early 1999." The record, therefore, shows that MFC Members received benefits, including their right to payment and credit-related reports, for approximately two years before any concern with regard to the manner in which BilStat was conducting business was raised. Additionally, through the complaint, the MFC Members seek (1) to recover all of the payments they allege are owed because of the use of FleetSmart Cards at their places of business and (2) an injunction requiring BilStat to relinquish all credit card-related information and software as required by the Processing Agreement. The Court finds that as the MFC Members, through the pending civil action, seek to enforce the terms of the Processing Agreement for their benefit, they cannot avoid the "burden" of arbitrating their claims as required by the arbitration agreement contained therein. Accordingly, the Court finds that, although not signatories to the Processing Agreement and its attendant arbitration clause, the MFC Members should be compelled to arbitrate all of the claims they have alleged against the named Defendants as either third party beneficiaries to that agreement and/or under the contract principle of estoppel.

The Court, having concluded (1) that all of the claims alleged by all of the Plaintiffs against all of the Defendants are subject to the arbitration agreement contained in the Processing Agreement, and (2) that that agreement is enforceable as a matter of law, finds that all Plaintiffs in this case should be compelled to submit their claims against all Defendants to arbitration.

## B. Should the Court Stay Proceedings in this Case Pending Arbitration?

Section three of the FAA requires a district court upon motion and upon being satisfied that the issue involved in [a civil action] is referable to arbitration ... [to] "stay the trial of the action until ... arbitration has been had in accordance with the terms of the agreement ..." 9 U.S.C. § 3. Plaintiffs oppose staying civil proceedings in this case arguing that a stay would preclude their ability to seek injunctive relief from the Court. Plaintiffs further allege that injunctive relief, in the form of a preliminary injunction, is necessary to obtain information regarding the FleetSmart credit card system which would enable them to collect the payments owed by the cardholders. Subsequent to the filing of their Response to the Motion to Dismiss, et al., Plaintiffs informed the undersigned by a correspondence dated August 20, 2001, that the parties were in the process of negotiating an agreement whereby the information, that was the subject of the proposed preliminary injunction, would be provided by BilStat. The Court, therefore, finds that the argument raised by Plaintiffs in opposition to the mandatory stay provision of the FAA is not well taken, and that all proceeding in this case should be stayed pending arbitration in accordance with federal law.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Plaintiffs for Extension of Time [8–1] is hereby denied as moot.

IT IS FURTHER ORDERED that the Motion of Defendants to Compel Arbitration [5–2] is hereby granted.

The claims of all Plaintiffs named in this case against all Defendants named in this case shall be submitted to arbitration in accordance with arbitration clause contained in the Processing Agreement entered between Mississippi Fleet Card, L.L.C., and BilStat, Inc., and all proceedings by the Plaintiffs named in this case are hereby stayed pending arbitration.

IT IS FURTHER ORDERED that as arbitration has been compelled and all issues in this case disposed of, the Clerk of the Court is to administratively close this case. Either party may seek, by motion, to reopen this case in the event further action is required by the Court. Accordingly, the Motion of Defendant to Dismiss [5–1] is denied.