# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00730-SCT

*ADAMS COMMUNITY CARE CENTER, LLC d/b/a*
*ADAMS COUNTY NURSING CENTER, ADAMS*
*COUNTY NURSING CENTER, MAGNOLIA*
*MANAGEMENT CORPORATION d/b/a*
*MAGNOLIA ANCILLARY SERVICES, INC.,*
*COMM-CARE MISSISSIPPI d/b/a ADAMS COMM-*
*CARE, LLC AND EDWARD E. CROW,*
*ADMINISTRATOR*

*v.*

*SHEILA REED, AS PERSONAL*
*REPRESENTATIVE AND CONSERVATOR OF*
*ANNIE REED*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/2008 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ROLAND F. SAMSON, III |
| ATTORNEYS FOR APPELLEE: | ROBERT L. COOPER, III |
| | JOHN G. (TRAE) SIMS, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/15/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. This case involves yet another nursing-home admissions agreement which contains

an arbitration clause. This Court must determine whether James or Larry Wesley, the adult

sons of a nursing-home resident, had authority to bind their mother's claims to arbitration.

Finding neither son had authority to bind his mother's claims to arbitration, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Annie Reed was admitted to Adams County Nursing Center on February 17, 2004. James Wesley signed the admissions agreement as the responsible party for his mother. On May 21, 2004, Larry Wesley signed a second, identical admissions agreement as the responsible party for his mother.[1] There is no evidence in the record that James or Larry Wesley had power of attorney at the time each signed the admissions agreements.[2] Each agreement contains the following arbitration provision, which is the subject of this appeal:

> The parties understand and agree that by entering this Arbitration Agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and jury.
>
> The Resident and/or Responsible Party understand that (1) he/she has the right to seek legal counsel concerning this agreement, (2) the execution of this Arbitration is not a precondition to the furnishing of services to the Resident by the facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within 30 days of signature. If not rescinded within 30 days, this Arbitration Agreement shall remain in effect for all care and services subsequently rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility.

¶3.     On December 27, 2005, Sheila Reed filed a complaint in Adams County Circuit Court as personal representative and conservator to her mother, Annie Reed, alleging claims of

---

[1] The Defendants allege that two agreements were signed because of disagreement among family members as to Annie Reed's medical treatment.

[2] We further note that the record does not contain a power of attorney for health care or any advance health-care directive.

2

nursing-home negligence and gross negligence against Adams County Nursing Center and various defendants.[3] Adams Community Care Center, LLC, d/b/a Adams County Nursing Center; Adams County Nursing Center; Magnolia Management Corporation, d/b/a Magnolia Ancillary Services, Inc.; Comm-Care Mississippi, d/b/a Adams Comm-Care, LLC; and Edward E. Crow, Administrator (collectively "ACNC"), filed a motion to dismiss, to compel arbitration and to stay. Following a hearing, the trial court entered an order denying the motion to dismiss and compel arbitration. The trial court found that, under the plain terms of the arbitration provision, James and Larry Wesley were not required to agree to arbitration for their mother to be admitted. The trial court concluded that accepting the arbitration provision was not part of a health-care decision.

¶4.     ACNC appeals the order denying the motion to dismiss and to compel arbitration.[4] It asserts the following issues on appeal:

> I.      Whether James and/or Larry Wesley had authority to bind Annie Reed's claims to arbitration pursuant to Mississippi Code Section 41-21-211.

---

[3]Sheila Reed filed the complaint against Adams Community Care Center, LLC d/b/a Adams County Nursing Center; Adams County Nursing Center; Legacy Care Inc. d/b/a Legacy Health Care Services, Inc.; Legacy Healthcare Services, Inc.; Magnolia Management Corporation; Magnolia Management Corporation d/b/a Magnolia Ancillary Services, Inc.; Comm-Care Mississippi d/b/a Adams Comm-Care Center, LLC; Community Extended Care Centers, Inc.; Louisiana Extended Care Centers, Inc; Promise Specialty Hospital; Elton Glynn Beebe, Sr.; Elton Glynn Beebe, Jr.; Herman K. Beebe, Jr.; Dr. Barry Tillman; Edward E. Crow, Administrator, and John Does 1-10.

[4]While the record does not contain a Mississippi Rule of Civil Procedure 54(b) certification, this Court has ruled that it has jurisdiction over orders denying or granting arbitration. *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1032 (Miss. 2010).

3

II. Whether James or Larry Wesley had apparent authority to bind Annie Reed's claims to arbitration.

III. Whether Annie Reed is a third-party beneficiary to the admissions agreement.

IV. Whether there is an available forum notwithstanding that the AHLA alternative dispute resolution service rules of procedure for arbitration apply to the parties' arbitration proceedings.

V. Whether the admissions agreement and arbitration provision are procedurally or substantively unconscionable.

¶5. We find that Issues I, II, and III are dispositive of this appeal.

## DISCUSSION

¶6. The denial of a motion to compel arbitration is reviewed de novo. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002). This Court has "endorsed the undisputed province of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA), and recognized its clear authority to govern agreements formed in interstate commerce wherein a contractual provision provides for alternative dispute resolution." *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 513 (Miss. 2005), *overruled on other grounds by Covenant Health & Rehab. of Picayune, L.P. v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss. 2009). We previously have ruled that the FAA is applicable to nursing-home admissions agreements that contain an arbitration clause. *Id.* at 515-16 (ruling nursing-home admissions agreements in the aggregate affect interstate commerce). Under the FAA, courts employ a two-pronged inquiry. *Taylor*, 826 So. 2d at 713. "The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Id.*

4

¶7.     To determine whether there is a valid arbitration agreement, we apply the law of contracts.  *See **Grenada Living Ctr., LLC v. Coleman***, 961 So. 2d 33, 36-37 (Miss. 2007).  The elements of a contract are "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation."  **Id.** at 37.  At issue is element four, whether James or Larry Wesley had the "legal capacity" to enter into the admissions agreement with ACNC which contained an arbitration provision.

## I.      Whether James and/or Larry Wesley had authority to bind Annie Reed's claims to arbitration pursuant to Mississippi Code Section 41-21-211.

¶8.     Under Section 41-21-211 of Mississippi's Uniform Health-Care Decisions Act ("the Act"), "[a] surrogate[5] may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the *primary physician[6] to lack capacity* and no agent or guardian has been appointed or the agent or guardian is not reasonably available."  Miss. Code Ann. § 41-41-211(1) (Rev. 2009) (emphasis added).  In

---

[5]If the patient has not designated a surrogate, then "any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate: (a) The spouse, unless legally separated; (b) *An adult child*; (c) A parent; or (d) An adult brother or sister.  Miss. Code Ann. § 41-41-211(2) (Rev. 2009) (emphasis added).  As Annie Reed's adult sons, James and Larry Wesley are class members under Section 41-41-211(2).

[6]The Act defines a primary physician as the "physician designated by an individual or the individual's agent, guardian, or surrogate, to have primary responsibility for the individual's health care or, in the absence of a designation or if the designated physician is not reasonably available, a physician who undertakes the responsibility."  Miss. Code Ann. § 41-41-203(o) (Rev. 2009).

other words, absent a designation, in order for James or Larry Wesley to act as a surrogate for health-care purposes, their mother's primary physician must have first determined that Annie Reed lacked capacity. Capacity is defined as "an individual's ability to understand the significant benefits, risks, and alternatives to proposed health care and to make and communicate a health-care decision." Miss. Code Ann. § 41-41-203(h) (Rev. 2009). Furthermore, "[a]n individual is presumed to have capacity to make a health-care decision." Miss. Code Ann. § 41-41-223(2) (Rev. 2009).

¶9. ACNC claims that Annie Reed lacked capacity when she was admitted to the nursing home, as evidenced by DeLisa Smith's affidavit and Dr. Barry Tillman's written certification. Smith, an employee of the nursing home, averred that she met with Annie Reed prior to Reed's admission and found Reed to be "confused and not able to understand our conversation adequately." In his certification, Dr. Tillman noted that Annie Reed was "confused" and required assistance or total dependence with activities of daily living.

¶10. Our Legislature has very specifically provided the manner in which the presumption that an individual has capacity to make a health-care decision may be rebutted: by a *primary physician* determining *lack of capacity*. Miss. Code Ann. § 41-41-211(1) (Rev. 2009). As noted by Reed, Smith is not a physician, and her opinion is irrelevant to this inquiry under Section 41-41-211. Furthermore, there is no evidence in the record that Dr. Tillman was Annie Reed's primary physician or that he ever determined she lacked "capacity" as that

6

term is defined under Section 41-41-203(h).[7] *See also* ***Compere's Nursing Home, Inc. v. Estate of Farish ex rel. Lewis***, 982 So. 2d 382, 384 (Miss. 2008) (ruling "there is no evidence that Ms. Farish had 'been determined by [her] primary physician to lack capacity'"); *see also* ***Magnolia Healthcare, Inc. v. Barnes ex rel. Grigsby***, 994 So. 2d 159, 162 (Miss. 2008) (Dickinson, J., concurring).

¶11.    This Court must follow the plain and unequivocal language of the statute and require that, in order for one to act as a health-care surrogate, there must first be a determination of a lack of capacity by a patient's primary physician. Because there is no evidence that a primary physician found Annie Reed to be incapacitated, we hold that neither James nor Larry Wesley had authority to act as a health-care surrogate.

¶12.    Furthermore, "the authority of a health-care surrogate is limited to making 'health-care decisions.'" ***Mississippi Care Center of Greenville, LLC v. Hinyub***, 975 So. 2d 211, 218 (Miss. 2008). As noted by the Court in ***Hinyub***, a health-care decision is a "'decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including: (i) Selection and discharge of health-care providers and institutions[.]'" *Id.* (quoting Miss. Code Ann. § 41-41-203(h)). The ***Hinyub*** Court ruled that an arbitration provision in a nursing-home admissions agreement is part of the health-care decision when it is "an essential part of the consideration for the receipt of 'health-care.'" *Id.*

---

[7]Furthermore, the "determination that a patient lacks or has recovered capacity . . . shall promptly [be] record[ed] . . . in the patient's health-care record . . . ." Miss. Code Ann. § 41-41-215(3) (Rev. 2009). As noted *supra*, the record contains no such determination.

7

The Court found that the arbitration provision expressly provided that the responsible party was not required to sign the provision in order for the potential resident to be admitted, and thus, the provision was not part of the consideration necessary for admission. ***Id.***

¶13. We note that the arbitration provision *sub judice* is identical to the provision discussed in ***Hinyub***. Therefore, the trial court correctly held that James and Larry Wesley had no authority to bind their mother's claims to arbitration when the arbitration provision was not "an essential part of the consideration for the receipt of 'health-care.'" ***Id.***

    **II.    Whether James or Larry Wesley had apparent authority to bind Annie Reed's claims to arbitration.**

¶14. ACNC argues that James and Larry Wesley had apparent authority because they represented to the nursing home via DeLisa Smith that each was the responsible party for Annie Reed. In order to recover under a theory of apparent authority, the claimant must put forth "sufficient evidence" of "(1) acts or conduct of the *principal* indicating the agent's authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance." ***Eaton v. Porter***, 645 So. 2d 1323, 1325 (Miss. 1994) (emphasis added). After reviewing the record, we find that ACNC has failed to put forth any evidence of prong one; therefore, the Court need not address prongs two and three. The record is devoid of any action on the part of Annie Reed indicating that either of her sons was her agent for the purpose of making health-care decisions. *See also* ***Compere's Nursing Home, Inc.***, 982 So. 2d at 384-85 (finding "no evidence in the record of any act or conduct [by the nursing-home resident] that would

8

mislead anyone into believing that [the resident's nephew] was her agent"). Therefore, we find this argument to be without merit.

### III. Whether Annie Reed is a third-party beneficiary to the admissions agreement.

¶15. ACNC contends that Annie Reed is a third-party beneficiary to the admissions agreement, which was signed by ACNC and Reed's sons. This Court has held that "arbitration agreements can be enforced against non-signatories if such non-signatory is a third-party beneficiary." *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006). This Court has held that a third-party beneficiary exists:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promissee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Yazoo & M.V.R. Co. v. Sideboard*, 161 Miss. 4, 133 So. 669, 671 (1931). "'In other words, the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.'" *Adams*, 943 So. 2d at 709 (quoting 17A C.J.S. *Contracts* 519(4) (1963)).

¶16. For a third-party beneficiary to exist, there must first exist a valid contract executed by one with "legal capacity" to enter the contract. *See Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 36-37 (Miss. 2007). ACNC has failed to put forth any evidence of James or Larry Wesley's legal capacity to execute the admissions agreement. Therefore,

9

Annie Reed cannot be a third-party beneficiary to the admissions agreement and subject to the arbitration provision.

## CONCLUSION

¶17.    We find that neither James nor Larry Wesley had authority to act as a surrogate on behalf of his mother under Mississippi's Uniform Health-Care Decisions Act.  Further, we find that ACNC has failed to put forth any evidence that James or Larry Wesley had either apparent authority or any other legal capacity to bind the dispute to arbitration.  Therefore, we affirm the trial court's determination that James and Larry Wesley lacked authority to bind the dispute to arbitration.  We affirm the trial court's order denying ACNC's motion to dismiss and compel arbitration.

¶18.    **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.  GRAVES, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

10