# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00072-COA

**CHARLIE WILSON, AS ADMINISTRATOR OF THE ESTATE OF WILLIE WILSON AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF WILLIE WILSON**  

APPELLANT

v.

**LEXINGTON MANOR SENIOR CARE, LLC**  

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/2020 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LOUISE HARRELL |
| ATTORNEYS FOR APPELLEE: | JACOB O. MALATESTA |
| | MICHAEL EARL PHILLIPS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 8/30/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Charlie Wilson (Wilson), as administrator of the Estate of Willie Wilson and on behalf of the wrongful death beneficiaries of Willie Wilson (Willie),[1] brought a medical malpractice action against Lexington Manor Senior Care LLC (LMSC) after Willie died in the nursing home's care. As litigation proceeded, LMSC filed a motion to compel arbitration, which the

---

[1] This case was initially filed by Tovas Wilson (Tovas), son of Willie Wilson. Tovas died during the pendency of this suit, and the trial court granted the unopposed motion by Charlie Wilson, Willie's brother, to be substituted as plaintiff. We will refer to both plaintiffs, Tovas Wilson and his successor Charlie Wilson, as Wilson in order to avoid confusion.

trial court granted. Wilson appealed, arguing that (1) the trial court incorrectly found Willie's wife, Glenda Wilson (Glenda), had apparent authority to sign an arbitration agreement for Willie's first admission to LMSC; (2) the trial court incorrectly found Willie's stepson, Eugene Ford (Eugene),[2] had actual authority to sign an arbitration agreement for Willie's second and final admission to LMSC; (3) LMSC waived the right to compel arbitration; and (4) the arbitration provision did not bind Wilson's claim to arbitration. Finding error in the trial court's determinations with regard to waiver, we reverse and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 11, 2015, Willie was signed into LMSC by his estranged wife, Glenda. This was the first of two occasions that Willie was admitted to the facility. Willie suffered from numerous medical conditions, including a disability from childhood, polio, that left him with multiple contractures[3] in both arms. On Willie's first admission to the facility, LMSC presented its admission agreement containing the arbitration provision to Glenda. LMSC's admission agreement included the following pertinent provisions regarding arbitration:

All parties identified and signing below as Co-Responsible Parties shall also

---

[2] Although Eugene was raised by Willie from infancy, it is undisputed that he was not Willie's biological child and was never adopted by Willie. Thus, stepson is the most accurate designation for the relationship, although Glenda was never married to Eugene's biological father.

[3] A contracture is defined as "[a] permanent tightening of the muscles, tendons, skin, and nearby tissues that causes the joints to shorten and become very stiff. This prevents normal movement of a joint or other body part." NIH National Cancer Institute, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/contracture (last visited Aug. 30, 2022).

2

be deemed to be a Party to this Agreement and hereby agree to all its terms and provisions. (The Responsible Party and Co-Responsible Parties are hereinafter singularly and collectively referred to as "Responsible Party[.]")

. . . .

**E.     ARBITRATION - <u>PLEASE READ CAREFULLY</u>**
1. It is understood and agreed by the Facility and Resident and/or Responsible Party that any legal dispute, controversy, demand or claim (hereinafter collectively referred to as "claim" or "claims") that arises out of or relates to the Admission Agreement, any service or health care provided by the Facility to the Resident or any matter related to the Resident's stay shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act, to be conducted at a place agreed upon by the parties, or in the absence of such agreement, at the Facility, in accordance with the procedural rules of the American Arbitration Association ("AAA") under its Commercial Arbitration Rules, . . . and not by a lawsuit or resort to court process except to the extent applicable state or federal law provides for judicial review of arbitration proceedings or the judicial enforcement of arbitration awards. . . . The Parties may *mutually* agree to further deviate from said rules of the American Arbitration Association in whole or in part. Otherwise, said procedural Rules should govern the arbitration.

 . . . .

3. This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment or refund for services rendered to the Resident by the Facility, violations of any rights granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice or any other claim based on any departure from accepted standards of medical or health care or safety whether sounding in tort or in contract. . . .

4. It is the intent of this agreement to arbitrate to affect *forum* only and not the substantive rights of the parties. Therefore, the parties agree that amounts to be awarded, if any, in an arbitration conducted pursuant to this arbitration provision shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against or limitation on, such amounts. Likewise, any applicable statute of limitations shall apply to any claims to be submitted to arbitration and notice of a party's intent to arbitrate any matter must be provided to the other party within the time provided under said applicable statute of

3

limitations.

5. It is the intention of the parties to this arbitration agreement that it shall inure to the benefit of and bind the parties, their successors and assigns, including the agents, employees and servants of the Facility and all entities in privity with the facility; and all persons whose claim is derived through or on behalf of the Resident, including that of any parent, spouse, child, guardian, conservator, executor, administrator, legal representative, wrongful death heir, or heir of the Resident.

6. The Parties, acknowledging that one of the primary purposes of arbitration is to reduce legal costs and expenses to both Parties, agree to raise all claims of which they have knowledge related to the subject matter of any arbitration initiated by either of them under this Agreement in said arbitration proceeding. . . . Likewise, the Resident and/or Responsible Party agree to raise any issues related to any allegations of negligent or intentional acts or omissions, medical malpractice and/or allegations of any care or services alleged to have been performed below the applicable standard of care of which they are aware at the time of arbitration in said arbitration proceeding. The Parties agree to bring and are authorized to bring any counterclaims related to the transactions or course of treatment or events which is the subject matter of any arbitration proceeding brought by the other Party in said arbitration.

7. ***The parties understand and agree that by entering this arbitration agreement, which binds both the Facility and the Resident/Responsible Party, they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury***.

8. The Resident and/or Responsible Party understand that (a) he/she has the right to seek legal counsel concerning this agreement prior to signing it, and (b) this arbitration provision shall remain in effect for all care and services rendered at the Facility and for all admissions, even if such care and services are rendered following the Resident's discharge and readmission to the Facility and even if such care and services were rendered prior to the date this Agreement was executed.

9. The Parties agree that, by executing this Agreement, they will be bound to arbitrate any dispute or claim that is asserted at any time in the future regardless of when the occurrence, events or incidents related to the claim occurred or transpired and regardless of whether the Resident still resides at the Facility.

10. The parties agree the Resident and Responsible Party have other choices with regard to the provision of long term care to the Resident and they enter into this Agreement voluntarily. The parties acknowledge that this Agreement involves interstate commerce and that this Arbitration Agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

**F.      MISCELLANEOUS PROVISIONS**

. . . .

**5. ANY RESPONSIBLE PARTY OR PARTIES EXECUTING THIS AGREEMENT REPRESENT AND WARRANT THAT THEY HAVE AUTHORITY, EITHER EXPRESS, IMPLIED OR APPARENT, TO ACT AS AGENT FOR THE RESIDENT AND TO EXECUTE THIS AGREEMENT ON RESIDENT'S BEHALF. LIKEWISE, THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF THE FACILITY REPRESENTS AND WARRANTS THAT THEY HAVE BEEN AUTHORIZED TO EXECUTE THIS AGREEMENT ON THE FACILITY'S BEHALF.**

Glenda signed this admission agreement as the "Responsible Party." Willie was discharged from the nursing home approximately a month later.

¶3.      On July 9, 2015, Willie was again admitted to LMSC due to his declining health. LMSC's admission paperwork, including the arbitration provision, was signed by Willie's stepson, Eugene, for his second admission. The second admission agreement contained identical language to the first agreement signed by Glenda and included an identical arbitration provision. On August 27, 2015, Willie died while in the care of LMSC. In October 2017, Willie's son Tovas filed a wrongful death lawsuit against LMSC on behalf of Willie's wrongful death beneficiaries.

¶4.      In February 2018, Wilson filed a motion for an enlargement of time to serve LMSC, which was granted. In April 2018, LMSC was served. In May 2018, LMSC filed its answer

and defenses, in which it asked "that [the trial court] enter judgment in its favor and against the [p]laintiff with costs to be assessed against [p]laintiff." The answer contained thirty-eight defenses and made several references to a judgment, but it did not mention arbitration as a defense.

¶5.    On the same day it filed its answer, LMSC also filed a motion to dismiss and/or for summary judgment alleging issues with service of process and that the statute of limitations had expired.  In August 2018, Wilson filed a response to LMSC's motion to dismiss and/or for summary judgment, refuting the service-of-process claims and attaching an affidavit from the process server.  In its August 2018 rebuttal in support of its motion to dismiss, LMSC acknowledged that it had been served as stated in the affidavit, but reiterated claims regarding the timeliness of service and the expiration of the statute of limitations.  The record supports that the motion to dismiss was denied by the circuit court prior to LMSC's filing of the motion to compel arbitration.  LMSC twice acknowledges the denial.  In the hearing transcript on the motion to compel arbitration, LMSC's attorneys acknowledge that they filed the motion to compel "in September this past year after this [c]ourt denied a motion to dismiss."  LMSC referred to the denial again in its appellee's brief.  The record does not include the transcript of a hearing for the motion to dismiss, and it appears from the docket that the ruling was never reduced to writing.  Even so, the record before us indicates that LMSC's motion to dismiss was indeed denied.

¶6.    In September 2018, LMSC first filed its motion to compel arbitration.  Wilson's response in opposition argued that neither Glenda nor Eugene had authority to sign the

6

admission agreements on behalf of Willie, and that LMSC had waived arbitration because it "litigated this cause before this court and has engaged in actions which are inconsistent with invocation of the purported arbitration agreement."

¶7.    In February 2019, a hearing was held on the motion to compel arbitration. During this hearing the trial court indicated that LMSC had not waived its motion to compel arbitration and held that Glenda, "as the wife of Mr. Willie Wilson, had apparent authority to act on behalf of Mr. Wilson" by signing the first admission agreement. The order also authorized limited discovery in order to determine (1) if Eugene had authority to sign the second admission agreement; and (2) "whether anyone could be considered a health care surrogate as the term is defined by the Uniform Health-Care Decisions Act." In the subsequent limited discovery, LMSC deposed Glenda and Dr. Todd Fulcher (the LMSC physician who examined Willie upon his first admission).

¶8.    In July 2019, as the limited discovery was proceeding, Tovas died, and an unopposed motion for substitution of parties was filed. The trial court entered a consent order substituting Charlie Wilson as plaintiff in September 2019. The limited discovery concluded with an affidavit from Eugene in March 2020.[4]

¶9.    After the conclusion of this limited discovery, LMSC filed a renewed motion to compel arbitration in October 2020, asserting that the discovery showed that Glenda and Eugene did have the authority to sign the admission agreements on Willie's behalf. Wilson's response to the motion to compel was filed in November 2020. In November 2020, a second

---

[4] Eugene was scheduled for a deposition in April 2020, but it was canceled due to the COVID-19 pandemic. LMSC submitted an affidavit on his behalf instead.

hearing was held on the motion to compel arbitration. The trial court determined that it would compel arbitration, "finding that there is evidence to support this and that the signatures were appropriate." The subsequent order, filed in December 2020, found that Eugene "had actual authority to act on behalf of Mr. Willie Wilson, including signing the July 2015 arbitration agreement." The trial court reiterated its finding that Glenda had apparent authority to sign the first admission agreement, although it found that "it is not clear that Ms. Glenda Wilson was a 'health care surrogate'" as that term is defined in the Uniform Health-Care Decisions Act. The order then stayed the matter and directed that the case proceed to arbitration. In January 2021, Wilson appealed the order granting LMSC's motion to compel arbitration.

## STANDARD OF REVIEW

¶10.    "In reviewing an appeal of an order compelling arbitration, we review the trial judge's factual findings under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions." *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020) (quoting *Smith v. Express Check Advance of Miss. LLC*, 153 So. 3d 601, 605-06 (¶8) (Miss. 2014)).

## DISCUSSION

¶11.    Our Supreme Court has "endorsed the undisputed province of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA), and recognized its clear authority to govern agreements formed in interstate commerce wherein a contractual provision provides for alternative dispute resolution." *Adams Cmty. Care Ctr. LLC v. Reed*, 37 So. 3d 1155, 1158 (¶6) (Miss.

8

2010) (quoting *Vicksburg Partners L.P. v. Stephens*, 911 So. 2d 507, 513 (¶10) (Miss. 2005), *overruled on other grounds by Covenant Health & Rehab. of Picayune L.P. v. Est. of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss. 2009)). Specifically, the Supreme Court applies the FAA "to nursing-home admissions agreements that contain an arbitration clause." *Id*. Our Supreme Court has provided the following guidance for determining the validity of a motion to compel arbitration under the FAA:

> [C]ourts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement. Under the second prong, the United States Supreme Court has stated that the question is whether legal constraints external to the parties' agreement foreclosed arbitration of those claims. Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionablity may be asserted to invalidate the arbitration agreement without offending the FAA.

*Virgil*, 296 So. 3d at 59 (¶13) (citations and internal quotation marks omitted). We only assess prong two, as we find it to be dispositive of this appeal.

¶12. Under the second prong, we assess whether legal constraints external to the parties' agreement have foreclosed on the possibility of arbitration. *Trinity Mission of Clinton LLC v. Barber*, 988 So. 2d 910, 915 (¶5) (Miss. Ct. App. 2007). Under the FAA, "agreements to arbitrate 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 914-15 (¶4) (quoting *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶11) (Miss. 2002)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, . . . [including] waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

9

*Corp.*, 460 U.S. 1, 24-25 (1983)).

¶13.     Our Supreme Court "[does] not favor findings of waiver of the right to compel arbitration." *Nutt v. Wyatt*, 107 So. 3d 989, 993 (¶11) (Miss. 2013) (citing *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 179 (¶39) (Miss. 2006)).  "The existence of a waiver is a factual determination to be made by the trial court, and this Court's scope of review is limited and governed by the manifest error/substantial evidence standard." *Scott Addison Constr. Inc. v. Lauderdale Cnty. Sch. Sys.*, 789 So. 2d 771, 776 (¶16) (Miss. 2001).  "However, a party may waive arbitration by 'either [(1)] active participation or substantial invocation of the litigation process which results in detriment or prejudice to the other party, or [(2)] engaging in conduct inconsistent with timely enforcing the arbitration agreement . . . .'" *Ungarino & Maldonado LLC v. Eckert & Tarleton LLC*, 285 So. 3d 724, 727 (¶10) (Miss. Ct. App. 2019) (quoting *Nutt*, 107 So. 3d at 994 (¶11)).  Specifically, the Supreme Court has found that "[t]aking advantage of pre-trial litigation such as answers, counterclaims, motions, requests, and discovery obviates the right to arbitration." *In re Tyco Int'l (US) Inc.*, 917 So. 2d 773, 779 (¶27) (Miss. 2005).

¶14.     Our Supreme Court has also cautioned that "parties desiring to seek arbitration should promptly file and present to the trial court a motion to stay proceedings and a motion to compel arbitration." *Century 21 Maselle & Assocs. Inc. v. Smith*, 965 So. 2d 1031, 1037 (¶10) (Miss. 2007) (quoting *Univ. Nursing Assocs. PLLC v. Phillips*, 842 So. 2d 1270, 1277 (¶23) (Miss. 2003)).  "A party claiming waiver must offer sufficient evidence at a hearing to overcome the presumption in favor of arbitration." *McCullar v. BankPlus*, 172 So. 3d 771,

773 (¶10) (Miss. Ct. App. 2013). The Supreme Court has offered the following discussion

of cases illustrating instances when an arbitration clause was waived:

> We found waiver "due to 'extensive' pre-trial litigation, where the party
> seeking to enforce arbitration had filed a 'summary judgment motion,
> requested two continuances, appealed to this Court based on a pre-trial ruling,
> and had requested various types of discovery.'" *Horton*, 926 So. 2d at 179-80
> (discussing and quoting *Cox* [*v. Howard, Weil, Labouisse, Friedrichs Inc*.,
> 619 So. 2d 908, 914 (Miss. 1993)]). Similarly, we found waiver "where the
> movant delayed for 237 days before moving to compel arbitration, failed to
> raise the defense of arbitration in the initial pleading, requested a jury trial in
> its answer, and thereafter proceeded with discovery." *Horton*, 926 So. 2d at
> 180 (discussing *Pass Termite and Pest Control v. Walker*, 904 So. 2d 1030,
> 1035 (Miss. 2004)). We again found waiver where a party "answered the
> original Complaint, but failed to assert arbitration as an affirmative defense,
> and instead demanded a jury trial[;] . . . joined in an agreed 'Order Setting
> Trial Date' and engaged in discovery[;]" and thereafter—
> "[t]wo-hundred-and-fifty-two (252) days after the Complaint was
> filed"—attempted to assert a right to arbitration. *Lemon Drop Props., LLC v.
> Pass Marianne, LLC*, 73 So. 3d 1131, 1135 (Miss. 2011) . . . . In *Horton*,
> although the defendants asserted their right to arbitration in their answer, they
> subsequently waived that right because, "rather than proceeding within a
> reasonable time to file a motion to compel arbitration and request a hearing on
> the motion, defendants proceeded to substantially engage the litigation process
> by consenting to a scheduling order, engaging in written discovery, and
> conducting [a] deposition." *Horton*, 926 So. 2d at 180. The *Horton* Court
> explained that the "[d]efendants ha[d] provided *no plausible explanation* for
> [their] delay." *Id*.

*Nutt*, 107 So. 3d at 994 (¶12) (emphasis added).

¶15.   In the present case, Wilson has offered evidence of both LMSC's substantial

invocation of litigation and conduct inconsistent with timely enforcing the arbitration

agreement.  Like in *Pass Termite & Pest Control*, and *Lemon Drop Properties*, LMSC filed

an answer to the complaint that asserted thirty-eight defenses, but failed to assert arbitration

as an affirmative defense.  *Pass Termite & Pest Control*, 904 So. 2d at 1035 (¶15); *Lemon*

11

*Drop Props. LLC*, 73 So. 3d at 1135 (¶13). Like in *Cox*, LMSC filed a motion to dismiss and/or for summary judgment that raised issues regarding service of process and the statute of limitations, which the trial court ruled upon. *Cox*, 619 So. 2d at 913. In *Horton*, the Supreme Court found that the arbitration clause was waived when the defendants waited eight months after filing their answer to pursue their right to arbitrate, while actively participating in the litigation process. *Horton*, 926 So. 2d at 180 (¶43). The Supreme Court there found that arbitration was waived, as the "[d]efendants have provided no plausible explanation for this delay." *Id*. Similarly, LMSC waited nearly four-and-a-half months after filing its answer before filing the motion to compel, while it participated in litigating its motion to dismiss and/or for summary judgment against Wilson and without giving a plausible reason for its delay.

¶16.    LMSC contends that it "found" the admission agreement after its motion to dismiss had been briefed and heard, and then subsequently filed the motion to compel. We find this argument strains credibility. Those "who sign contracts are charged with knowledge of the documents they execute." *Norwest Fin. Miss. Inc. v. McDonald*, 905 So. 2d 1187, 1194 (¶15) (Miss. 2005) (citing *Russell v. Performance Toyota Inc.*, 826 So. 2d 719, 726 (¶28) (Miss. 2002)); *see also Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513-14 (D.C. Cir. 1966) (rejecting a defendant's claim that it delayed in moving to compel arbitration because it was unaware of the arbitration clause; reasoning that a party "must be charged with knowledge of the terms of its own agreement"). As the drafter of the admission agreements, the contracts containing the arbitration provisions were always in the possession of LMSC.

LMSC has no plausible explanation for the delay in filing the motion to compel arbitration because the agreements were in its possession before the complaint was filed and at the time it filed an answer asserting its affirmative defenses.

¶17.   Additionally, Wilson has shown prejudice to his claim.  This Court has determined that "[p]rejudice . . . refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Manhattan Nursing & Rehab. Ctr. LLC v. Williams*, 14 So. 3d 89, 92 (¶11) (Miss. Ct. App. 2009) (quoting *Phillips*, 842 So. 2d at 1278 (¶30).  During these proceedings both the original plaintiff, Tovas, and a crucial witness, Glenda Wilson, have died.  The case was delayed for almost a year before the motion to compel arbitration was filed as the parties proceeded with the initial stages of litigation. Wilson incurred the expense of having to defend the case against a motion to dismiss and/or for summary judgment before the motion to compel was filed, as well as a motion to substitute parties after the motion to compel was filed.  Wilson can show evidence of both substantial invocation of the litigation and conduct inconsistent with timely enforcing the arbitration agreement.  Additionally, he can show detriment or prejudice to his claim. Therefore, we find that the motion to compel arbitration has been waived in this case.

## CONCLUSION

¶18.   For the foregoing reasons, we find that LMSC waived its right to arbitrate the present case.  We further find that the trial court erred when it granted LMSC's motion to compel. For these reasons, we reverse the trial court's order compelling arbitration and remand this

13

case to the trial court for further proceedings.

¶19.    **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. CARLTON, P.J., AND EMFINGER, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**